**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EMIRHAN TEKELI,<br><br>Petitioner,<br><br>vs.<br><br>LEONARD ODDO, et al.<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 3:25-cv-500<br><br>District Judge Stephanie L. Haines<br>Magistrate Judge Peter E. Ormsby |

# REPORT AND RECOMMENDATION

## I. Recommendation

Before the Court is Petitioner Emirhan Tekeli's Petition for Writ of Habeas Corpus. ECF No. 1. Petitioner is a citizen of Türkiye who is in the custody of the U.S. Department of Homeland Security (DHS). He challenges the lawfulness of his immigration detention on several grounds. The key the issue is whether Petitioner, who was released on recognizance in January 2023 and then re-detained in October 2025, is now subject to mandatory detention under 8 U.S.C. § 1225(b) or discretionary detention under 8 U.S.C. § 1226(a).

For the reasons explained below, § 1226(a) applies, and Petitioner's detention without a bond hearing violates the statute. It is thus respectfully recommended that the Petition be granted to the extent that Respondents be directed to provide Petitioner with a bond hearing pursuant to § 1226 before an immigration judge within seven (7) days. It is further recommended that Petitioner's request for fees and costs be denied without prejudice as premature and that the Petition be denied to the extent it requests any additional relief.

## II. <u>Report</u>

### A. Background

Unless otherwise indicated, the following facts are undisputed. Petitioner entered the United States without inspection on January 25, 2023, by crossing the U.S.-Mexico border near the San Ysidro Port of Entry in San Diego, California. ECF No. 1-2 at 3; ECF No. 9 at 4. But he did not get far. Border Patrol agents arrested him near the Port of Entry and took him into custody. ECF No. 9 at 3. A few days later, on January 27, 2023, Border Patrol placed him in removal proceedings. ECF No. 1-2 at 3. Petitioner was thereafter released on an order of recognizance issued on a Form I-220A. *Id*. at 2.

After his release, Petitioner moved to Millville, Delaware, where he lived for about two and a half years until the arrest and detention that gave rise to this Petition. ECF No. 1, ¶ 28. Petitioner applied for and received work authorization, and he began working. *Id.* at ¶29; *see also* ECF No. 1-2 at 3. During the time since his release on recognizance, Petitioner was never arrested or convicted on criminal charges (other than traffic violations). ECF No. 1, ¶ 29; ECF No. 1-2 at 3.

On April 24, 2023, Petitioner applied for withholding of removal and asylum with the U.S. Citizenship and Immigration Services (USCIS). *Id.* On December 19, 2023, USCIS closed that proceeding, citing lack of jurisdiction. ECF No. 1, ¶4; ECF No. 1-2 at 3. About seven months later, on July 9, 2024, an immigration judge closed Petitioner's removal proceedings due to DHS's "failure to prosecute." ECF No. 1-2 at 2.

Despite the dismissal of his removal proceedings, Petitioner continued to comply with the conditions of his release on recognizance by reporting regularly to DHS officers with

Immigration and Customs Enforcement (ICE) in Dover, Delaware. ECF No. 1, ¶ 30. There is no indication in the record that Petitioner violated any of the conditions of his January 2023 release.

However, when Petitioner appeared for a regular check-in on October 7, 2025, ICE officers arrested and detained him.[1] ECF No.1, ¶30; ECF No. 1-2 at 2. According to the ICE arrest report (Form I-213), "[o]fficers informed [Petitioner] that ICE planned to cancel his Order of Release on Recognizance, Form I-220A, in lieu of a new Notice to Appear, Form I-862. [Petitioner] was informed that removal proceedings would occur in a detained setting." ECF 1-2 at 2.

A month later, on December 5, 2025, Petitioner filed a motion for release on bond. ECF No. 1-7. Three days later an immigration judge denied the request based on "[l]ack of jurisdiction," citing *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025). ECF No. 1-5.

On January 22, 2026, the immigration judge entered an order finding Petitioner removable and denying his applications for asylum and withholding of removal. ECF No. 9-1. Petitioner appealed that ruling to the Board of Immigration Appeals (BIA), and his appeal remains pending. *See* ECF No. 12 at 2.

At the time he filed the Petition in this case, Petitioner was detained at Moshannon Valley Processing Center (Moshannon). ECF No. 1, ¶1. As of today, Petitioner is now detained at Cambria County Prison (as reflected by a search of the online ICE detainee locator). Petitioner states that he has been at Cambria County Prison since February 11, 2026. ECF No. 12-3. Petitioner describes mental and physical health issues that he has experienced during detention, including anxiety, insomnia, and a stomach ulcer. ECF No. 12-3 at 1-3.

---

[1] Petitioner states the date of detention as October 3, 2025 (ECF No. 1, ¶30), but the Form I-213 arrest report reflects October 7, 2025, as the correct date. ECF No. 1-2. The inconsistency is not relevant.

In challenging his immigration detention, Petitioner asserts statutory, regulatory, and constitutional grounds for relief. *See* ECF No. 1, ¶¶ 59-77. The parties' briefing focuses on Petitioner's claim that his detention violates the Immigration and Nationality Act (INA), specifically 8 U.S.C. § 1226. Because that claim is dispositive, it will be the focus of this report as well.

**B. Analysis**

Title 28, United States Code, § 2241, allows a court to grant a writ of habeas corpus to a prisoner held "in violation of the Constitution or laws or treaties of the United States[.]" *Id.* at § 2241(c)(3). This habeas jurisdiction generally extends to aliens challenging the lawfulness of their immigration detention, as Petitioner does here. *See Demore v. Kim*, 538 U.S. 510, 517-18 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Petitioner claims his detention violates 8 U.S.C. § 1226(a). ECF No 1 at 10-17. Respondents, on the other hand, contend he is properly detained under 8 U.S.C. § 1225(b)(2). In support of that argument, Respondents rely on the BIA's rulings in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025). ECF No. 9 at 7-14. Before turning to Respondent's arguments based on *Hurtado* and *Q. Li*, the statutory framework on which those decisions rest will be briefly described.

1. <u>Statutory Framework</u>

The statutes at issue here govern the detention of noncitizens pending removal proceedings.[2] Beginning with § 1225, the Supreme Court has explained:

> [Section] 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b)

[2] "The term 'alien' means any person not a citizen or national of the United States." 8 U.S.C. § 1101(3). Thus, the terms "alien" and "noncitizen" are used interchangeably in this Report.

> divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).
>
> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." . . . [N]othing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (alterations in original).

There is one exception to mandatory detention under § 1225. Noncitizens detained under either § 1225(b)(1) or § 1225(b)(2) may be temporarily paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R §§ 212.5(b), 235.3 (implementing regulations). But this humanitarian parole is limited. "[W]hen the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Jennings*, 583 U.S. at 288 (quoting § 1182(d)(5)(A)).

Turning to the other statute governing a noncitizen's detention pending removal proceedings, § 1226(a) provides that an alien already present in the United States who is subject to removal proceedings "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. 1226(a). Once arrested, the Attorney General

"may release the alien on . . . bond" or "conditional parole."[3] *Id.* at § 1226(a)(2). Implementing these statutory provisions, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

As can be seen from this statutory framework, Petitioner is lawfully detained if his detention is governed by § 1225; on the other hand, Respondents have violated § 1226 by denying him a bond hearing if his detention is governed by § 1226.

2. *Hurtado* Issue

Respondents' reliance on the BIA's decision in *Hurtado* is misplaced. That ruling arose out of the DHS's recent change in policy regarding the detention of aliens found within the country. As Respondents acknowledge, "[b]efore 2025, 'successive presidential administrations and many immigration judges treated unadmitted aliens as being subject to § 1226(a) rather than § 1225(b)(2).'" ECF No. 9 at 7 (quoting *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026)). But that longstanding policy changed "on July 8, 2025, [when] the DHS issued interim guidance that all aliens who enter the country without being admitted or who otherwise arrive in the United States without proper documentation are subject to detention under § 1225(b) and may not be released from ICE custody except by § 1182(d)(5) parole." ECF No. 9 at 7. Soon after the new policy was announced, the BIA decided *Hurtado* and essentially adopted DHS's new policy, holding that "Immigration Judges lack authority to hear bond requests or to

[3] As an exception to the Attorney General's broad discretion under § 1226(a) to release aliens pending removal proceedings, § 1226(c) defines certain categories of aliens who generally must be detained, including aliens who have committed certain crimes. *See* 8 U.S.C. 1226(c). Respondents do not suggest that Petitioner could be detained under § 1226(c).

grant bond to aliens, like [Mr. Yajure Hurtado], who are present in the United States without admission." *Hurtado*, 29 I. & N. Dec. 216, at *225.

Respondents candidly acknowledge that "most courts who have addressed this issue, including all courts in this district, have agreed with Petitioner" that *Hurtado* was wrongly decided. ECF 9 at 8 (citations omitted). Indeed, many courts in this Circuit and around the country have rebuffed DHS's attempts to use § 1225(b)(2) to detain noncitizens who had already entered the United States without inspection and been present here for years. *See, e.g.*, *Marcel v. Warden, Cambria Cnty. Prison*, No. CV 3:26-757, 2026 WL 1674821, at *2 (W.D. Pa. June 10, 2026) (collecting cases); *Lopez v. McShane*, No. 26-771, 2026 WL 767779, at *4 (E.D. Pa. Mar. 18, 2026) (collecting cases); *Calzado Diaz v. Noem*, No. 3:25-cv-458, 2025 WL 3628480 (W.D. Pa. Dec. 15, 2025); *Barco Mercado v. Francis*, 811 F.Supp.3d 487, 494-95 (S.D.N.Y. 2025) (collecting 350 cases). Notwithstanding this weight of authority, Respondents invite the Court to reconsider those rulings and follow the Fifth Circuit's contrary holding in *Buenrostro-Mendez*.

If there was any remaining doubt about the rule that should apply here, it was put to rest by the Third Circuit's very recent decision in *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026). That case involved petitioners who had entered the United States without inspection in 2001 and 2014, respectively, and thus they had been living in the country for many years before ICE arrested and detained them without bond under § 1225(a)(2)(A). Consistent with the rulings in similar cases decided in this District, the Third Circuit concluded: "Because § 1225(b)(2)(A) does not apply to Petitioners as they were not detained at the border, their detentions were unlawful under that provision of the INA." *Id*. at *7. From this holding it follows that *Hurtado* was wrongly decided and that Respondents' reliance on that ruling lacks merit.

3. *Q. Li* Issue

Respondents argue that the "Court could also find that Petitioner is subject to mandatory detention based on *Q. Li*," noting that the immigration judge who denied Petitioner's bond request cited *Q. Li* in support of the proposition that he lacked jurisdiction to set bond. ECF No. 9 at 12; *see also* ECF No. 1-5 at 1 (Dec. 8, 2025, order denying bond). Petitioner responds that the holding in *Q. Li* does not apply here because there is a key factual distinction. ECF No. 10 at 17-19. Petitioner is correct.

The BIA's decision in *Q. Li* addressed a Chinese citizen who crossed the southern border of the United States in June 2022. A DHS officer encountered her about 5.4 miles from a port of entry. After she admitted she lacked documents to legally enter the United States, the officer arrested her without a warrant. The next day DHS released her on humanitarian parole under § 1182(d)(5)(A).

As a condition of her parole, Ms. Li regularly reported to a DHS field office. In October 2024, DHS learned from Interpol that she was wanted in Spain for the crimes of forgery and human smuggling. At her next scheduled appointment with DHS, in November 2024, officers took her into custody and issued a notice to appear for removal proceedings. The next month, an immigration judge denied her request for custody redetermination.

Based on these facts, the BIA concluded: "As an alien arrested without a warrant while arriving in the United States, the respondent's continued detention is mandated by section 235(b) of the INA, 8 U.S.C. § 1225(b), regardless of whether DHS elected to pursue expedited removal under section 235(b)(1) or place her directly in full removal proceedings pursuant to section 235(b)(2)(A)." *Q.* Li, 29 I. & N. Dec. at 70. The BIA further noted that, "[w]hile DHS' grant of parole under section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A), allowed for the

respondent's temporary release from custody, it was automatically terminated when she was served with a notice to appear." *Id*. (citing 8 C.F.R. § 212.5(e)(2)(i)). As "an applicant for admission who was arrested without a warrant while arriving in the United States and thereafter placed in removal proceedings," Q. Li was detained under § 1225(b)(2)(A) and ineligible for bond. *Id*. at 71.

Respondents' reliance on *Q. Li* is understandable in one sense: as in that case, Petitioner was encountered by a Border Patrol officer near a port of entry soon after he had crossed the border into the United States. Thus, unlike the typical *Hurtado*-type cases, Petitioner was encountered near the border as he attempted to enter the country.[4] At the time, Petitioner was—like Ms. Li—an "applicant for admission" under § 1225(a)(1) as "an alien . . . who arrives in the United States (whether or not at a designated port of arrival[)]" or who "is present" but "has not been admitted." 8 U.S.C. § 1225(a)(1); *see also DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (noting that "an alien who tries to enter the country illegally is treated as an 'applicant for admission'") (citing § 1225(a)(1)). Given that status, Petitioner—again, like Ms. Li—faced the prospect of mandatory detention under either § 1225(b)(1) or § 1225(b)(2) "until certain proceedings [had] concluded" (i.e., either consideration of an asylum application or removal proceedings). *See Jennings*, 583 U.S. at 297. But that is where the similarity ends.

As Respondents acknowledge, the noncitizen in *Q. Li* "was released on a grant of humanitarian parole under § 1182(d)(5)(A)," while Petitioner in this case "was released on recognizance and not on humanitarian parole." ECF No. 9 at 12. That difference is significant.

[4] Respondents describe "*Hurtado* cases" as follows: "individuals who entered the United States without inspection; after a passage of time, they were encountered by immigration authorities in the interior, placed in standard removal proceedings, and recently were detained under 8 U.S.C.§ 1225(b)(2)(A)." ECF No. 9 at 1-2.

As the BIA correctly pointed out in *Q. Li*, "[t]he *only exception* permitting the release of aliens detained under . . . § 1225(b), is the parole authority provided by . . . § 1182(d)(5)(A). 29 I. & N. Dec. at 69 (emphasis added). In other words, DHS could not have released Petitioner on recognizance if he were detained under § 1225(b). The conclusion that DHS processed and released Petitioner under § 1226 is confirmed by DHS's use of form I-220A to release him on recognizance.[5] *See* ECF No. 1-2 at 2. Form I-220A states that the noncitizen's release is pursuant to INA § 236, which is codified at 8 U.S.C. § 1226.[6] *See Aldana Serrano v. Albarran*, No. 25-CV-08408-EKL, 2025 WL 4110874, at *1 (N.D. Cal. Nov. 28, 2025) (taking "judicial notice of the fact that the Form I-220A states that release is subject to 8 U.S.C. § 1226") (citation omitted).

In addition, as Petitioner points out in his reply brief, later events further confirm that his release or detention pending removal proceedings falls under § 1226(a). ECF 10 at 13-15. A year and a half after Petitioner's release on recognizance, on July 9, 2024, an immigration judge dismissed his initial removal proceeding due to DHS's "failure to prosecute." *See* ECF 1-2 at 2. That dismissal arguably severed the connection between Petitioner's arrival in the United States and his removal proceedings.

It was not until over a year later, on October 7, 2025, that ICE finally served Petitioner with a new notice to appear for removal proceedings under INA § 240 (8 U.S.C. § 1229a). ECF No. 1-3. The notice charged that he was "an alien present in the United States who has not been admitted or paroled"—but did not allege that he was "an arriving alien." *Id*. ICE also served Petitioner with an arrest warrant using Form I-200. ECF 1-2 at 3. In doing so, "Respondents

---

[5] Petitioner's release order is not in the record. The I-213 arrest report prepared in October 2025 states that Petitioner was released on recognizance using Form I-220A. ECF No. 1-2 at 2.

[6] A sample of Form I-220A is available on ICE's website. *See* https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf (last visited Sept. 4, 2026).

invoked the discretionary detention provisions of 8 U.S.C. § 1226 in the Form I-200 administrative warrant."[7] *Martha C.G.P. v. Blanche*, No. CV 26-2308, 2026 WL 1329577, at *2 (D. Minn. May 13, 2026); *see also* ECF No. 10-1 (copy of sample Form I-200). Thus, ICE's arrest of Petitioner in October 2025 was carried out under § 1226(a).

Given that DHS has consistently treated Petitioner as subject to § 1226(a), Respondents' attempt to now argue that his detention is governed by § 1225(b) is unpersuasive. Other courts have reached the same conclusion under similar circumstances. For example, in *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 481 (S.D.N.Y. 2025), Border Patrol had encountered Mr. Lopez Benitez, a citizen of Paraguay, near the Mexico-Arizona border in May 2023. Border Patrol took him into custody, served him with a Form I-200 arrest warrant, and released him on recognizance the same day. About two years later, in July 2025, ICE agents arrested Mr. Lopez Benitez as he was leaving an immigration hearing. "The warrants for Mr. Lopez Benitez's respective arrests in 2023 and 2025 explicitly authorized those arrests pursuant to 'section 236 of the Immigration and Nationality Act'—i.e., § 1226." *Id.* at 485.

The court found that Mr. Lopez Benitez's "release on recognizance is not 'humanitarian' or 'public benefit' 'parole into the United States' under §§ 1225 and 1182(d)(5)(A), but rather a

---

[7] As the court noted in *Martha C.G.P.*, "the warrant was directed to: 'Any immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations.'" *Martha C.G.P.*, 2026 WL 1329577, at *2; *see also Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 311–12 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026) (noting that the "sections [on the Form I-200] correspond to 8 U.S.C. §§ 1226, 1357 and 8 C.F.R. 287.1–287.12," which "supports the conclusion that [the petitioner's] detention is governed by Section 1226(a)'s discretionary framework.").

form of 'conditional parole' from detention, authorized under § 1226." *Id.* (citations omitted). Based on the respondents' handling of Mr. Lopez Benitez's immigration case, the court concluded:

> These facts, taken together, can support only one conclusion—that Mr. Lopez Benitez was not mandatorily detained as a noncitizen "seeking admission" under § 1225(b), but rather as someone "already in the country," *Jennings*, 583 U.S. at 288-89, 138 S.Ct. 830, pursuant to Respondents' discretionary authority under § 1226(a) . . ..

*Id.* at 486.

A sister court in our Circuit came to the same conclusion on similar facts in *Saavedra-Hernandez v. Bondi*, No. 26-CV-00510, 2026 WL 172553 (D.N.J. Jan. 22, 2026). In that case, a citizen of Venezuela, Mr. Saavedra-Hernandez, entered the United States without inspection in August 2022. "Border patrol detained him upon entry but released him on his own recognizance." *Id.* at *1. Over three years later, in November 2025, ICE arrested and detained Mr. Saavedra-Hernandez. After reviewing the circumstances surrounding his release on recognizance, the court concluded: "Therefore, it seems from the record that the Department 'has consistently treated [petitioner] as subject to detention on a *discretionary* basis under § 1226(a), which is fatal to [r]espondents' claim that he is subject to mandatory detention under § 1225(b).'" *Id.* at *2 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 483) (emphasis in original).[8]

---

[8] *See also Salas v. Soto*, No. CV 25-17339, 2026 WL 485712, at *3 (D.N.J. Feb. 21, 2026) (rejecting the Government's contention that the petitioner was subject to mandatory detention under § 1225(b)(1) and granting him a bond hearing under § 1226(a) where, after crossing the Rio Grande River to enter the United States, Border Patrol officials initially "released" him "pursuant to [their] authority under 8 U.S.C. § 1226(a)"); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 276 (D. Mass. 2025) (distinguishing *Q. Li* and holding that 1226(a) governed the petitioner's detention where, soon after crossing into the United States, he was arrested by Border Patrol and was "immediately issued a Notice to Appear and then conditionally paroled on an Order of Recognizance issued under Section 1226(a)"); *Anirudh v. McShane*, No. CV 25-6458, 2025 WL 3527528, at *5 (E.D. Pa. Dec. 9, 2025) (granting the petitioner a bond hearing under § 1226(a) where, after entering the United States without inspection, he was "arrested, detained and

(Footnote continued on next page . . .)

Likewise, in the instant case, DHS's consistent handling of Petitioner's immigration proceedings under the authority of § 1226(a) should be fatal to Respondents' contention that he is now subject to mandatory detention under § 1225(b).[9] By the time DHS initiated new removal proceedings and arrested Petitioner in October 2025, he had been living and working within the United States for over 32 months (more than two and a half years). His circumstances are thus indistinguishable from those of noncitizens who entered the United States without inspection, lived here for some time, and were later arrested and detained based on DHS's new enforcement policy. As noted, applying 1225(b) in that scenario has been rejected by every court in this District and now by the Third Circuit as well.

---

released on his own recognizance" and where the "Respondents have consistently treated Petitioner under § 1226 since he arrived in the United States").

[9] Respondents cite several cases for the "general proposition that initial release on recognizance does not preclude a court from later finding that § 1225(b) applies." ECF 9 at 13-14 (citing cases). While those decisions are well-reasoned, they reflect a different approach to the issues compared to many cases decided in this District and to the Third Circuit's recent analysis in *Buele Morocho*. For example, Respondents cite *Chen v. Almodovar*, No. 25 CIV. 9670, 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026). In that case, the court concluded that the petitioner's initial release on recognizance did not preclude the finding that § 1225(b) still applies. *Id*. at *14. But in addition, the court also provided a detailed and cogent explanation for its broader conclusion that "the Government has the better reading of the INA" regarding the application of § 1225(b)(2)(A) to noncitizens who had already entered the United States without inspection and been present for years. *Id*. at *1-*13. Of course, that conclusion—as the *Chen* court readily acknowledged—is contrary to "the overwhelming majority of judges" around the country. *Id*. at *1. While reasonable jurists can (and do) differ in attempting to interpret the complex web of immigration laws and regulations, the cases cited above in this Report are relied on because they are more consistent with the approach taken by the courts in this District and by the Third Circuit in *Buele Morocho.*

In sum, Respondents violated § 1226(a) in denying Petitioner a bond hearing after his removal proceeding was reinstituted. Because Petitioner has established that his detention without a bond hearing violates federal law, he is entitled to habeas relief, and it is unnecessary to address his other claims. *See* 28 U.S.C. § 2241(c)(3).

**C. Remedy**

As relief, Petitioner requests that the Court order Respondents to schedule a bond hearing before an immigration judge or, in the alternative, order his immediate release. As discussed in this Report, in October 2025 DHS instituted a new removal proceeding against Petitioner under § 1226(a) when he was detained and served with an arrest warrant and notice to appear.

Noncitizens detained under § 1226(a) are entitled to "receive bond hearings at the outset of detention." *Jennings*, 538 U.S. at 306 (citing 8 CF.R. §§ 236.1(d)(1), 1236.1(d)(1)). Consistent with that right, in cases where DHS has denied a bond hearing to a noncitizen arrested within the country, courts typically grant habeas relief in the form of a bond hearing before an immigration judge. *See, e.g.*, *Singh v. Oddo*, No. 25-429, 2026 WL 73789, at *5 (W.D. Pa. Jan. 9, 2026) (finding "as a matter of statutory interpretation, that [the petitioner] is entitled to a bond hearing" and denying other relief "such as immediate release"); *Calzado Diaz v. Noem*, No. 3:25-cv-458, 2025 WL 3628490, at *8 (W.D. Pa. Dec. 15, 2025) (finding that where the petitioner was detained three years after entering the country and denied a bond hearing, "he [was] entitled to a bond hearing under § 1226(a), but no more"); *Salas v. Soto*, No. CV 25-17339, 2026 WL 485712, at *3 (D.N.J. Feb. 21, 2026) (stating that the petitioner was entitled to a bond hearing under § 1226(a) and that the "appropriate remedy in this matter is therefore not the outright release that Petitioner seeks, but rather a bond hearing").

Petitioner also requests the Court to award costs and reasonable attorney fees under the Equal Access to Justice Act (EAJA). At this stage, however, Petitioner's request for fees and costs is premature. *See* 28 U.S.C. 2412 ("a party seeking an award of fess and other expenses shall, within thirty days of final judgment in the action, submit to the court an application…"); *see also Abioye v. Warden Moshannon Valley Correctional Center*, 169 F. 4th 418 (3rd Cir. 2026). The Court expresses no opinion on whether an EAJA application would be appropriate or granted in this case.

**D. Conclusion**

For the foregoing reasons, it is respectfully recommended that the Petition be granted to the extent that Petitioner be given a bond hearing before an immigration judge within seven (7) days that includes an individualized determination of whether Petitioner poses a danger to the community or a flight risk under the § 1226(a) framework. The immigration judge shall state the reasons for the custody determination orally on the record or in writing. If bond is denied, the immigration judge shall identify the principal facts and evidence relied upon in determining that Petitioner poses a danger to the community, a flight risk, or both. Nothing in this Report and Recommendation suggests or requires the immigration judge to reach any particular custody determination.

It is further recommended that Petitioner's request for fees and costs be denied without prejudice as premature and that the Petition be denied to the extent it requests other relief.

**Notice to the Parties**

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may, within fourteen (14) days, file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Signed on September 9, 2026.

Peter E. Ormsby
United States Magistrate Judge